UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH THOMAS, JAMES KESKENY,
JILL BABCOCK, MARTIN DROUILLARD,
& EMMA DANIELS,

    Plaintiffs,

                Case No. 08-11580
v.               HON. GEORGE CARAM STEEH

NORTHWEST AIRLINES CORPORATION and
WAYNE COUNTY AIRPORT AUTHORITY,

    Defendants.
_____/

OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANT NORTHWEST AIRLINE CORPORATION'S MOTION FOR DISMISSAL (DOCUMENT # 6)

This matter comes before the Court on Defendant Northwest Airlines Corporation's ("NWA") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Oral argument was heard on July 10, 2008. For the reasons set forth below, the Court will grant the motion in part and deny the motion in part.

BACKGROUND

Plaintiffs filed this lawsuit against NWA and the Wayne County Airport Authority (the "Airport Authority") alleging that both Defendants have failed to comply with the Air Carrier Access Act, 49 U.S.C. § 41705 ("ACAA") and Department of Transportation ("DOT") rules promulgated thereunder, 14 C.F.R. Part 382 et seq.; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"); and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"). NWA filed the present Motion to Dismiss for failure to state a claim. The Airport Authority also filed a Motion for Partial Dismissal solely on the ACAA claim. Plaintiffs have since stipulated to the entry of an Order dismissing the ACAA claim only against the Airport Authority. As a result, the Airport Authority's motion is no longer before the Court.

NWA and the Airport Authority provide access to air travel and attendant facilities at Detroit Metro Airport, including but not limited to McNamara Terminal, Smith Terminal, and adjoining areas such as parking facilities. NWA is one of the world's largest commercial airlines and operates over fifteen thousand flights a week worldwide. Many of these flights originate from the McNamara terminal at Detroit Metro Airport, but NWA also has hubs in Minneapolis/St. Paul, Memphis, Tokyo, and Amsterdam. The Airport Authority is the state government-chartered entity that oversees Detroit Metro Airport.

Plaintiffs are five disabled individuals who each claim that NWA and the Airport Authority discriminate against them and other disabled individuals by imposing obstacles to air travel not encountered by those without disabilities. Plaintiffs allege that Defendants fail to provide adequate access or assistance on the aircraft and throughout the terminal and attendant facilities in a variety of ways. Among other things, Plaintiffs have missed flights due to a lack of prompt or adequate assistance, have been dropped to the ground when being assisted onto aircraft, and have suffered repeated damage to their wheelchairs due to improper handling and stowing.

Plaintiffs originally attempted to resolve issues regarding the lack of accessibility through a series of conversations and meetings with both Defendants in 2006. The

Airport Authority, in conjunction with NWA, voluntarily committed in October 2006 to improving access for the disabled, agreeing among other things, to allow for an independent audit of the facilities and services at Detroit Metro Airport. Plaintiffs allege that it is unknown if the audit actually took place and that both Defendants continually fail to comply with obligations to provide access to disabled persons. Plaintiffs express concerns that treatment of disabled airline passengers does not appear to be improving.

Plaintiffs seek a declaration that their rights were violated, as well as injunctions: 1) restraining Defendants from receiving further federal licensing or funding until they provide equal access to individuals with disabilities, 2) ordering Defendants to provide equal access and allowing Plaintiffs to review any construction plans prior to their implementation, and 3) restraining Defendants from further discrimination.

In its Motion to Dismiss, NWA contends that the ACAA does not provide a private right of action, that the text of the ADA explicitly bars plaintiffs from bringing a claim against an airline, and that the Rehabilitation Act does not apply to airline carriers.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a claim on an issue of law. To survive a Rule 12(b)(6) motion for dismissal for failure to state a claim, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, __ U.S.__, 127 S.Ct. 1955 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of

3

the allegations in the complaint are true." Bell Atlantic, 127 S.Ct. at 1964-65. In so holding, the Supreme Court disavowed the traditional Rule 12(b)(6) standard of Conley v. Gibson, 355 U.S. 41, 45-46 (1957) which required the appearance, "beyond a doubt, that plaintiff can prove no set of facts in support of claim that would entitle him to relief." Bell Atlantic, 127 S.Ct. at 1969.

ANALYSIS

**I. Air Carrier Access Act**

The Air Carrier Access Act of 1986, 49 U.S.C. § 41705, protects disabled individuals from discrimination by "air carriers" on the basis of mental or physical impairment. Specifically, 49 U.S.C. § 41705 states that:

> In providing air transportation, an air carrier . . . may not discriminate against an otherwise qualified individual on the following grounds:
> (1) the individual has a physical or mental impairment that substantially limits one or more major life activities.
> (2) the individual has a record of such an impairment.
> (3) the individual is regarded as having such an impairment.

NWA does not dispute that Plaintiffs are qualified individuals, but argues that Plaintiffs' ACAA claim should be dismissed because the ACAA does not provide for a private right of action. NWA contends that the text of the ACAA and the DOT regulations promulgated thereunder create a comprehensive enforcement scheme which demonstrates that Congress did not intend, expressly or by implication, to create a private right of action.

In determining whether a private right of action exists, the Supreme Court has found that the intent of Congress is controlling. Alexander v. Sandoval, 532 U.S. 275 (2001). In Sandoval, which did not make any reference to the ACAA itself, the Court

4

stated that:

> Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

Sandoval, 532 U.S. at 286-87 (citations and internal quotations omitted). The Court found that it could limit its search for legislative intent to the text of the provision itself and the statutory structure in which it was embedded. Id. at 288.

Defendants rely on Love v. Delta Air Lines, 310 F.3d 1347, 1351-52 (11th Cir. 2002) and Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir. 2004), which both followed the analysis set out in Sandoval and found that there is no private right of action under the ACAA. Defendants point to the text of the ACAA and its accompanying regulations to support their contention that Congress did not implicitly intend for there to be a private right of action. Specifically, 49 U.S.C. § 46101(a)(1) states that an individual with a disability may file a complaint with the DOT about an individual allegedly violating the ACAA. This statute further describes actions open to the DOT in enforcing the ACAA: the DOT may enter an order compelling compliance, 49 U.S.C. § 46101(a)(4); revoke an air carrier's certificate, 49 U.S.C. § 41110(a)(2)(B); or impose a fine of up to $100,000 for each violation, 49 U.S.C. § 46301(a)(5)(B)(iv). Finally, Defendants argue that 49 U.S.C. § 46110(a), which permits an individual with substantial interest in an action to seek review in a U.S. court of appeals, demonstrates that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290.

5

Plaintiffs argue that Congress did in fact intend for there to be a private right since one has historically been recognized by the courts, and Congress has not since prohibited a private right when it has amended the ACAA. Plaintiffs agree that Sandoval is good law, but that Love and Boswell are mistaken in holding that Congress did not intend to create a private right under the ACAA. They suggest that Love and Boswell are in fact committing the unauthorized judicial "federal substantive lawmaking" that the Supreme Court disapproved of in Sandoval and that the more logical interpretation would be to conclude that Congress in fact did intend for there to be a private right. Plaintiffs rely on Tallarico v. Trans World Airlines, Inc., 881 F.2d 566 (8th Cir. 1989) and Shinault v. American Airlines, Inc., 936 F.2d 796 (5th Cir. 1991), both of which held that Congress intended for a private right to exist under the ACAA.

Tallarico and Shinault analyzed the question using the four factor test set out in Cort v. Ash, 422 U.S. 66, 78 (1975):

> First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

This four factor method of analysis was overruled by Sandoval, which refined the analysis to the sole question of whether Congress intended to create a private right of action. Sandoval, 532 U.S. at 288. However, in both Tallarico and Shinault, the district courts found the requisite legislative intent. The different outcomes result from the different sources used- Love and Boswell looked to the statutory framework of the

6

ACAA and Shinault and Tallarico looked to legislative history. Boswell, 361 F.3d at 1266 (holding that the ACAA does not establish a private right of action after examining the ACAA, accompanying regulations, and applicable case law.); Love, 310 F.3d at 1359 ("Neither [Shinault nor Tallarico] focused exclusively on whether Congress intended to create such a right to sue. Following Sandoval, we may not engage in a similarly wide-ranging interpretive inquiry."); Shinault, 936 F.2d at 801 ("When a statute contains no remedial provision or when the remedial provision is unclear, courts must seek congressional intent from the language of the statute as a whole, legislative history of the statute, and the congressional purposes underlying the statute."); Tallarico, 881 F.2d at 569-70 (agreeing with the district court that "Congress implicitly intended that handicapped persons would have an implied private cause of action to remedy perceived violations of the [ACAA]."). The D.C. and Sixth Circuits have reserved the question. See Tunison v. Cont'l Airlines Corp., 162 F.3d 1187, 1188 n. 1 (D.C. Cir. 1998); Bower v. Fed. Express Corp., 96 F.3d 200, 204 n. 9 (6th Cir. 1996).

Plaintiffs point to the legislative history of the ACAA to support their claim that the Act provides for an implied right of action. Congress first specifically prohibited discrimination by air carriers on the basis of disability when it enacted the Rehabilitation Act of 1973, which states that "no otherwise qualified individual with handicaps in the United States, as defined in Section 706(8) of this Title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. . . ." 29 U.S.C. § 794(a).

In 1986, the Supreme Court held that Section 504 of the Rehabilitation Act did

not automatically apply to commercial airlines because they, unlike airport operators, were not the intended recipients of federal financial assistance. United States Dept. of Transportation v. Paralyzed Veterans of America, 477, U.S. 597 (1986). Congress responded to Paralyzed Veterans by passing the ACAA later that year due to concerns that the Court's decision would leave disabled air travelers open to possible discriminatory treatment by airlines. The DOT was given authority to implement rules in furtherance of the ACAA under 14 C.F.R. Part 382.1.

Plaintiffs' argument that the contemporary legal context at the time of the ACAA's enactment should control is severely weakened by the Court in Sandoval, which stated that "[w]e have never accorded dispositive weight to context shorn of text. In determining whether statutes create private rights of action, as in interpreting statutes generally, legal context matters only to the extent it clarifies text." Sandoval, 532 U.S. at 288. In fact, Plaintiffs all but ceded their ACAA claim in their impassioned argument at bar, choosing instead to focus on their ADA and Rehabilitation Act claims. As the controlling law, Sandoval is clear on the matter of statutory interpretation, and Defendant's Motion to Dismiss Plaintiffs' ACAA Claim is therefore GRANTED.

## II. Americans with Disabilities Act

Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Public accommodation" is defined to include

entities affecting commerce such as "a terminal, depot, or other station used for specified public transportation" 42 U.S.C. § 12181(7)(G).

The focus of the argument over the proper statutory interpretation concerns the definitional provision at 42 U.S.C. § 12181(10) which reads:

> The term "specified public transportation" means transportation by bus, rail, or any other conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis.

NWA argues that the Plaintiffs' ADA claim should be dismissed as a matter of law because it is barred by the explicit text of the statute. Because plaintiffs' claims all relate to a terminal used for transportation by aircraft, NWA concludes that the ADA is simply inapplicable to its facilities or services at the terminal. This position has some support in case decisions from other courts. *See*, for example, Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1332, (11th Cir. 2004) ("[A]irlines such as Southwest are largely not even covered by Title III of the ADA. Rather, airplanes and their accompanying terminals and depots are covered by another disability-access statute, the pre-ADA Air Carrier Access Act."). At oral argument, Plaintiffs proposed a narrow reading of the statute, suggesting instead that only the plain meaning of "aircraft" should be used to define the scope of the statute's exception to the entities included as public accommodations.

When interpreting a statute, the court must look to the plain language of the statute and apply it, unless the language is ambiguous or would lead to an absurd result. Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266, 270 (6th Cir. 1990). Other courts have found that the ADA does not apply to airport terminals. *See* Love v.

Delta Airlines, 179 F. Supp. 2d 1313, 1316 (M.D. Ala. 2001) ("[A]ircraft are expressly excepted from the statutory definition of "specified public transportation."); Puckett v. Northwest Airlines, Inc., 131 F. Supp. 2d 379, 382 (E.D.N.Y. 2001) ("Defendants argue, logically, that the preclusion of aircraft from the definition of "specified public transportation" similarly removes airport terminals from the reach of the ADA."). However, this interpretation is inconsistent with the plain meaning of the statute.

Congress chose to exclude aircraft from the definition of "specified public transportation," but did not exclude terminals from its definition of places of public accommodation. Indeed, the NWA terminal in this case is used for bus, rail, and other motorized transport along with its principal function as a center for transportation by aircraft. This interpretation is consistent with Congress's intent to limit the ACAA's reach to aircraft and the ADA's reach to public spaces such as terminals. In fact, to conclude otherwise would leave the door open for acts of discrimination that could not be remedied. For example, NWA provides four "WorldClubs" throughout the Wayne County Airport, the largest of which is 20,000 square feet, to NWA WorldClub members. Using NWA's interpretation would permit possible discriminatory acts within the WorldClubs that would leave qualified disabled individuals without a remedy. Therefore, a clear distinction must be drawn between aircraft, which is covered by the ACAA, and the terminal, which is covered by the ADA. A precise line defining the scope of ADA coverage within the terminal and ACAA coverage attendant to aircraft can only be drawn after the parties are afforded discovery in the case.

For the aforementioned reasons, NWA's Motion to Dismiss Plaintiffs' Title III ADA claim is hereby DENIED.

**III. Section 504 of the Rehabilitation Act**

Plaintiffs argue that Defendant NWA is in violation of Section 504 of the Rehabilitation Act of 1973. The Rehabilitation Act states in relevant part that "no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under any program or activity that either receives Federal financial assistance or is conducted by any Executive agency." NWA does not dispute that Plaintiffs are "qualified individuals with disabilities" as defined by the Rehabilitation Act, but argues that they do not receive federal financial assistance and thus the Rehabilitation Act does not apply to them. Plaintiffs argue that there is a genuine issue of material fact as to who exerts control over the airport, which is a federally assisted facility and is covered under the Rehabilitation Act.

The Rehabilitation Act prohibits discrimination against persons with disabilities in any program or activity receiving federal financial assistance. 29 U.S.C. § 794. NWA argues that both the U.S. Supreme Court and the U.S. Court of Appeals for the Eleventh Circuit have found that this statute does not apply to commercial airline carriers. Paralyzed Veterans, 477 U.S. at 605-06 (finding commercial airline carriers are largely not covered by the Rehabilitation Act); Shotz v. Am. Airlines, Inc., 420 F.3d 1332, 1334, 1336- 37 (11th Cir. 2005) (holding defendant commercial airline carriers, including NWA, could not be sued under the Rehabilitation Act and emphasizing that, to find otherwise would undermine the ACAA).

In Paralyzed Veterans, the Supreme Court overturned the Court of Appeals' ruling that the Rehabilitation Act applies to commercial airlines as recipients of federal financial assistance. 477 U.S. 597 at 604 (1986). The Court found that although airlines

11

benefitted from an air traffic control system which was federally funded, the air traffic control system was "owned and operated" by the United States, and thus was not considered to be "federal financial assistance" at all. "Rather, it is a federally conducted program that has many beneficiaries but no recipients." Id. at 612. The Court clarified the distinction between a recipient and a beneficiary of federal financial assistance in its conclusion that the Rehabilitation Act applies to the former but not the latter:

> The statute covers those who receive the aid, but does not extend as far as those who benefit from it. In Grove City we recognized that most federal assistance has "economic ripple effects." We rejected the argument that those indirect economic benefits can trigger statutory coverage. 465 U.S. 555, 572 (1984). Congress tied the regulatory authority to those programs that receive federal financial assistance; the key is to identify the recipient of that assistance.

Id. at 607. NWA argues that the holding in Paralyzed Veterans precludes it from being covered under the Rehabilitation Act since it is only a beneficiary of federal financial assistance rather than a direct recipient. However, Plaintiffs argue that there is a question of material fact as to the level of control exerted by NWA over the airport and surrounding environs and thus discovery should be allowed to determine what level of control, if any, NWA exerts over Wayne County Airport.

Given the analysis in Paralyzed Veterans, discovery is necessary to assess whether it is to be distinguished from the present case. At issue in Paralyzed Veterans was whether the benefit of the air traffic control system could subject air carriers to the Rehabilitation Act. Here, however, Plaintiffs argue that NWA's level of utility goes far beyond the use of an air traffic control system to encompass the potential control over an entire airport facility.

Due to the unique circumstances at the McNamara terminal and the Wayne

County Airport in general, the respective levels of control exerted by NWA and the Airport Authority are unclear. NWA's presence at the Wayne County Airport places it in a unique position to deny public access to a federally funded airport and airway service. Discovery is thus necessary to allow an examination of the contractual relationship between the two entities to determine whether NWA has discretion over federal funding that would qualify it as a recipient and make it subject to provisions of the Rehabilitation Act. NWA's Motion to Dismiss Plaintiffs' Rehabilitation Act claim is therefore DENIED to permit discovery.

## CONCLUSION

For the aforementioned reasons, the Defendant's Motion to Dismiss is GRANTED as to the ACAA claim and DENIED as to the ADA and Rehabilitation Act claims.

IT IS SO ORDERED.

Dated: September 2, 2008

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 2, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---